SQUIRE PATTON BOGGS (US) LLP
Marisol C. Mork (State Bar No. 265170)
marisol.mork@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Attorneys for Petitioner
Raw Entertainment B.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Ex Parte Petition of Raw Entertainment B.V.<br><br>Petitioner. | Case No.<br><br>**EX PARTE PETITION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING** |

1. Pursuant to 28 U.S.C. § 1782, Petitioner Raw Entertainment B.V., a Curacao stock corporation ("Roobet"), requests issuance of a subpoena to National Merchant Corporation ("NMC"), a corporation with its principal place of business in Los Angeles, California. Roobet seeks documents and electronically stored information from NMC for use in a commercial action it intends to file against NMC's affiliate Wirebloom Limited ("Wirebloom") in the courts of London, England.

2. As explained further below, Roobet and NMC contracted in 2024 for NMC to provide payment processing services to Roobet. The business relationship was terminated on September 30, 2025. Without any sustainable legal basis, NMC continues to hold the sum of $1,750,765.87 that is due to Roobet, comprised of $961,575.68 immediately due and payable to Roobet, and $789,190.20 held as a reserve balance.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

3. In response to demands issued by Roobet since the termination, Wirebloom Limited, a company formerly known as System Merchants UK Limited and with company number: 10770584, incorporated under the Companies Act 2006 on 15 May 2017 and with registered office, The Office Group, One Canada Square, London, England, E14 5AA, has responded to Roobet's demand letters and appears to take responsibility for the funds owed to Roobet, with Wirebloom's Chief Executive Officer Eugene Shampansky telling Roobet that "[Wirebloom] is doing everything we can to get this situation resolved with you as quickly as we can."

4. Based upon Wirebloom's apparent participation in resolution efforts, Roobet believes that its transactions were aggregated by NMC and passed to Wirebloom, its affiliate. Accordingly, Wirebloom appears to now hold Roobet's funds and has no basis to retain or hold them.

5. Based on the facts known to date and the additional discovery sought by this Petition, Roobet contemplates filing a legal action in England against Wirebloom asserting the following claims:

a. For a declaration that Wirebloom is holding Roobet's monies on a constructive or resultant trust;

b. For an accounting as to what sums were or are held by Wirebloom and are due to Roobet;

c. For an order requiring the transfer of such funds to Roobet;

d. For damages arising from Wirebloom's facilitation of a misapplication of the funds due to Roobet by NMC and/or Wirebloom's procurement of a breach of the Merchant Agreement by NMC by processing transactions and failing to make them available to NMC for repayment to Roobet;

e. For restitution for Wirebloom's unjust enrichment at the expense of Roobet, to whom the sums belonged beneficially.

f. For interest, legal costs, and any other relief that the Court finds just.

[Johnson Decl., ¶ 22].

6. NMC would not be a party to the contemplated action against Wirebloom and is unlikely to be joined in the English litigation. Indeed, any contractual claims against NMC would need to be pursued in accordance with the Merchant Agreement's arbitration and dispute resolution provisions. Roobet thus brings this action to obtain information central to the litigation it contemplates pursuing in England against Wirebloom.

7. Information from NMC relating to the Merchant Agreement, NMC's relationship with Wirebloom, and NMC's accounting of funds received from or on behalf of Roobet is necessary to allow Roobet to fully pursue its claims against Wirebloom in the matters to be initiated in England.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this petition is filed under 28 U.S.C. §1782.

9. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1782 because NMC is headquartered at, and thus resides and can be found at, 1431 Ocean Avenue, Suite 100, Santa Monica, CA 90401.

## FACTUAL AND PROCEDURAL BACKGROUND

10. Petitioner Roobet is a Curacao corporation, headquartered in Curacao. Roobet was established in 2014 and operates an online gambling site, Roobet.com, offering casino games, sports betting and esports wagering services.

11. NMC is a provider of technological solutions for advanced payment processing solutions, including but not limited to, the provision of Bank wire and card processing services (including, but not limited to, the processing of debit cards, credit cards, prepaid cards and/or virtual cards), serving both domestic and international customers. Mr. Eugene Shampansky is the Chief Executive Officer of NMC.

12. Wirebloom is a self-described "One Stop Payment Solutions Provider" for businesses, fintechs and the financial service sector." *See* Wirebloom, *About Us*, available at https://wirebloom.com/about/#section_intro (last visited February 9, 2026). Mr. Eugene

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Shampansky is also the Chief Executive Officer of Wirebloom. On information and belief, Wirebloom is an affiliate of NMC.

13. In August 2024, Roobet was looking to partner with a financial institution that could provide, among other things, acquiring, processing, and settlement services to enable Roobet to accept cards transactions and alternative payment methods (such as digital and mobile wallets, bank transfers, and cryptocurrency) for transactions initiated by Roobet or Roobet's customers via its website. To find such a financial institution, it entered into a Payment Services Agreement with Black Site Processing, LLC, a limited liability company with its principal offices located in Wilmington, Delaware. Pursuant to that agreement, Black Site introduced Roobet to NMC.

14. NMC and Roobet then entered into a Merchant Agreement, dated September 8, 2024. The Merchant Agreement was electronically signed by Eugene Shampansky, CEO of NMC.

15. Pursuant to the Merchant Agreement, NMC would serve "as an aggregator with respect to [Roobet's] [t]ransactions, and in such capacity provide [Roobet] with payment solution technologies of execution of [t]ransactions, including but not limited to receipt and/or transfer of funds on behalf of [Roobet] from third parties, and access to payment platform interface for processing credit card payments for credit cards."

16. During the one-year term of the Merchant Agreement, Roobet's transactions were processed and remitted to it. Additionally, NMC established a reserve balance from deductions from payments due to Roobet.

17. The Merchant Agreement was terminated on September 30, 2025 in accordance with the provisions governing termination.

18. Despite the termination of business relationship, NMC continued to hold significant funds belonging to Roobet. To date, NMC continues to hold $1,750,765.87 that remains due and owed to Roobet. This amount is comprised of $961,575.68 that is immediately due and payable to Roobet ("Payable Balance") and $789,190.20 that was held by NMC as a reserve balance.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

19. By letter dated October 22, 2025, Roobet issued a formal written demand for immediate release of the funds held by NMC on its behalf. Roobet demanded the immediate and unconditional transfer of the full payable balance of $961,575.68, demanding payment to be credited to its designated bank account no later than the close of business two (2) working days from the date of the letter. With respect to the reserve balance of $789,190.20, Roobet demanded structured, scheduled releases of the reserve balance so that the full amount held in reserve would be released by March 30, 2026.

20. In response to the demand letter, Mr. Eugene Shampansky, in his capacity as CEO of Wirebloom, emailed Roobet on October 23, 2025:

> [Roobet] will be receiving [its] funds, it is simply a matter of when . . . . At this point we are awaiting a full reconciliation of all outstanding funds and once we have that we will share that with you. We are also working on a faster release than 180 days, from termination but that will be addressed once we know the final numbers.

21. By emails dated November 5, 2025 and November 7, 2025, in further response to Roobet, Mr. Shampansky, again writing in his capacity as CEO of Wirebloom, copied Wirebloom's legal team on his communications. In his email of November 7, 2025, Mr. Shampansky included his assistant at Wirebloom to enable legal teams to coordinate and, on that date, Mr. Shampansky confirmed that: "[Wirebloom hasn't] been able to get settlement data from the bank yet and therefor that is what's causing the delays . . . . Rest assured, we are doing everything we can to get this situation resolved with you as quickly as we can."

22. On November 13, 2025, Mr. Shampansky, again writing in his capacity as CEO of Wirebloom, informed Roobet that: "My team is still gathering the information."

23. By December 2025, Roobet had still not received any of the funds improperly held by NMC and/or Wirebloom. Accordingly, Roobet was constrained to engage legal counsel who again demanded release of $1,750,765.87 by correspondence dated December 30, 2025 and January 30, 2026.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

24. While there has been some correspondence from Wirebloom since the January 30, 2026, Wirebloom has failed to provide any substantive responses to Roobet's demands for information and immediate release of the sums Roobet believes are improperly held by Wirebloom.

25. Accordingly, Roobet is constrained to initiate legal proceedings against Wirebloom in the English court. Based on the foregoing, it appears that Wirebloom was aware of its sister subsidiary's Merchant Agreement with Roobet. Roobet further believes that Wirebloom may hold sums belonging to Roobet. On that basis, Roobet contemplates filing the following claims against Wirebloom:

(a) For a declaration that Wirebloom is holding Roobet's monies on a constructive or resultant trust;

(b) For an accounting as to what sums were or are held by Wirebloom and are due to Roobet;

(c) For an order requiring the transfer of such funds to Roobet;

(d) For damages arising from Wirebloom's facilitation of a misapplication of the funds due to Roobet by NMC and/or Wirebloom's procurement of a breach of the Merchant Agreement by NMC by processing transactions and failing to make them available to NMC for repayment to Roobet;

(e) For restitution for Wirebloom's unjust enrichment at the expense of Roobet, to whom the sums belonged beneficially.

(f) For interest, legal costs, and any other relief that the Court finds just.

[Johnson Decl., ¶ 22].

26. The documents sought by Roobet from NMC pursuant to this Petition are directly relevant to those claims. [Johnson Decl., ¶ 23]. The documents sought demonstrate that NMC aggregated Roobet's transactions and passed them to its alter ego/sister entity Wirebloom, to be processed by Wirebloom via the card schemes from whom Wirebloom has received the proceeds, and that Wirebloom now holds (or held) the funds owed to Roobet. The documents seek NMC's communications with Wirebloom about such

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

transactions, information regarding Wirebloom's role with respect to Roobet (including whether Wirebloom processed amounts due to Roobet and transactions as a payment processor of Roobet's customer transactions), the location of those sums, and the identity of those involved in authorizing transactions related to Roobet, [Johnson Decl., ¶¶ 23 – 24 & Exh. A].

**ROOBET SATISFIES THE STATUTORY REQUIREMENTS UNDER SECTION 1782.**

27. An applicant under 28 U.S.C. §1782 "must show that the person from whom the discovery is sought resides or is found in the district … where the application is made, (2) the discovery is for use in a proceeding in a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *CPC Patent Technologies Pty Ltd v. Apple, Inc.* (9th Cir. 2024) 119 F.4th 1126, 1129 (citations and internal quotes omitted). Each of these requirements is satisfied here.

28. NMC is headquartered in this judicial district and thus subject to Section 1782 discovery here. *See United States v. Google, LLC* (N.D. Cal. 2023) 690 F.Supp.3d 1011, 1017 (holding that Google was subject to 1782 subpoenas based on the location of its headquarters within the Northern District).

29. The discovery sought will be used in a "proceeding in a foreign or international tribunal" as required by Section 1782. The Supreme Court has explained that a foreign proceeding need not be "pending" or even "imminent" when the discovery is sought. *Intel Corp. v. Advanced Micro Devices, Inc.* (2004) 542 U.S. 241, 258-59, 124 S.Ct. 2466. So long as a future proceeding is "within reasonable contemplation," it satisfies the statute's requirement. *Id.* at 259, 124 S. Ct. 2466.

30. Petitioner will be a claimant in the contemplated litigation, and thus an "interested person" under Section 1782. *Intel Corp. v. Advanced Micro Devices, Inc.* (2004) 542 U.S. 241, 256, 124 S.Ct. 2466 ("No doubt litigants are included among, and may be the most common example of, the interested person[s] who may invoke § 1782"). "Would-be" plaintiffs in future suits qualify as "interested persons" under Section 1782. *Novalpina*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Capital Partners I GP S.A.R.L v. Read*, 149 F.4th 1092, 1098 (9th Cir. 2025) ("Novalpina was an 'interested person' as it was currently a party to the foreign litigation and a would-be plaintiff in the future fraud suit").

31. And the information that Roobet seeks will be used to prosecute Roobet's claims in the lawsuit it contemplates filing in the trial courts of England, including demonstrating that NMC aggregated Roobet's transactions and passed them to its alter ego/sister entity Wirebloom, to be processed by Wirebloom via the card schemes from whom Wirebloom has received the proceeds, and that Wirebloom now holds (or held) the funds owed to Roobet. The documents seek NMC's communications with Wirebloom about such transactions, information regarding Wirebloom's role with respect to Roobet (including whether Wirebloom processed amounts due to Roobet and transactions as a payment processor of Roobet's customer transactions), the location of those sums, and the identity of those involved in authorizing transactions related to Roobet, [Johnson Decl., ¶¶ 23-24 & Ex. A]; *In re Banco Mercantil del Norte*, S.A. (4th Cir. 2025)126 F.4th 926, 931 (To satisfy the "for use" requirement, a petition "need only show that 'there is a reasonable possibility that the evidence sought will be employed with some advantage or serve some use in the proceeding.'") (citations omitted). Thus, all three statutory elements are satisfied.

**<u>THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING ROOBET'S REQUEST FOR DISCOVERY.</u>**

32. Where, as here, the threshold statutory requirements are met, courts then evaluate the four "*Intel* factors": (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery requests are "unduly intrusive or burdensome." *CPC Patent Technologies Pty Ltd* (9th Cir. 2024)

119 F.4th at 1129 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.* (2004) 542 U.S. 241, 255). Each of these factors weighs in favor of Roobet's request for discovery here.

33. First, NMC is not presently contemplated to be a party to the English litigation as any contractual disputes between NMC and Roobet relating to the Merchant Agreement are subject to arbitration as provided in the Merchant Agreement.. *Intel Corp.* (2004) 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and their evidence "may be unobtainable absent § 1782(a) aid.").

34. Second, the English courts will receive the requested evidence. [Johnson Decl. ¶¶ 26-28.] Indeed, numerous courts have found that "English courts would be receptive to relevant evidence [that] may [be] obtain[ed] through § 1782." *In re PJSC Uralkali for an Order Pursuant to 28 U.S.C. § 1782*, Case No. C18-1673JLR, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019); *see also In re Fischer Advanced Composite Components AG*, C08-1512RSM, 2008 WL 5210839, at *3 (W.D. Wash. Dec. 11, 2008)(finding that the second *Intel* factor favored the § 1782 applicant because "the English court would presumably be receptive to the introduction of relevant evidence.").

35. Third, Roobet is seeking evidence to prosecute its claims against Wirebloom who, based on the facts alleged above, is believed to be improperly holding $1,750,765.87 that remains due and owed to Roobet. [Johnson Decl. ¶¶ 23-24.] Roobet is not attempting to circumvent any rules of English or U.S. law, but instead seeks discovery (a) from a third party that was directly involved in the transactions underlying the to-be filed claims in England and (b) that is necessary for Roobet to have a full and fair opportunity to prosecute its claims against Wirebloom.

36. Moreover, English law contemplates the use of discovery from foreign jurisdictions, like that requested here. There is every reason to believe that the English High Court will accept evidence obtained through Section 1728 discovery in the United States. English law does not have any procedural bars on the submission or use of evidence obtained through foreign discovery proceedings as long as it is relevant to the domestic

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

case. [Johnson Decl. ¶¶ 26-28]. Indeed, several district courts within the Ninth Circuit considering whether discovery otherwise available under Section 1782 would be available for use in the United Kingdom found no indication that the English courts would not be receptive. *See e.g. In re Fischer Advanced Composite Components AG*, No. C08-1512 RSM, 2008 WL 5210839, at *3 (W.D. Wa. Dec. 11, 2008) (noting that an English court would presumably be receptive to the introduction of relevant evidence but ultimately denying Section 1782 application on grounds that discovery was equally available in both foreign and domestic jurisdictions).

37. Finally, NMC was deeply involved in the transactions underlying the contemplated English litigation and the information Reboot seeks to obtain is directly relevant to the dispute. [Johnson Decl. ¶¶ 23-24.] Further, the amount in controversy exceeds $1,000,000 rendering Roobet's requests proportional to the needs of the case and not unduly burdensome. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

**RELIEF REQUESTED**

For the foregoing reasons, Roobet respectfully requests that the Court direct the Clerk of the Court to issue the proposed subpoena filed with this Petition, to compel Roobet

///

///

///

///

///

///

///

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

to produce documents (including electronically stored information) in accordance with Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure.

Dated: February 23, 2026

/s/ *Marisol C. Mork*
Marisol C. Mork (State Bar No. 265170)
marisol.mork@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581
Attorneys for Petitioner
Raw Entertainment B.V.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071