Marisol C. Mork (State Bar No. 265170)
marisol.mork@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Attorneys for Petitioner
Raw Entertainment B.V.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Ex Parte Petition of Raw Entertainment B.V.<br><br>Petitioner. | Case No.<br><br>**DECLARATION OF BEN JOHNSON IN SUPPORT OF ROOBET'S EX PARTE PETITION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING** |

1. I, Ben Johnson, a solicitor admitted to practice in England & Wales, declare under penalty of perjury as follows:

2. I am a litigation partner of the law firm of Squire Patton Boggs (UK) LLP ("SPB").

3. I submit this Declaration in support of the petition of Raw Entertainment B.V. ("Roobet") for an order pursuant to 28 U.S.C. § 1782 to conduct limited discovery for use in a contemplated proceeding to be filed in The High Court of Justice, Business and Property Court of England & Wales (the "High Court").

4. SPB acts for Roobet in respect to its contemplated claim against Wirebloom Ltd. in the United Kingdom.

5. Roobet is a Curacao corporation that was established in 2014 and operates an online gambling site, Roobet.com, offering casino games, sports betting and esports wagering services.

6. NMC is a provider of technological solutions for an advanced payment gateway, including but not limited to provision of Bank card processing (including, but not limited to, debit cards, credit cards, prepaid cards and/or virtual cards) and Bank wires services (as defined below), serving both domestic and international customers.

7. Wirebloom is a self-described "One Stop Payment Solutions Provider" for businesses, fintechs and the financial service sector." *See* Wirebloom, *About Us*, available at https://wirebloom.com/about/#section_intro (last visited February 9, 2026). On information and belief, Wirebloom is an affiliate of NMC.

8. In August 2024, Roobet was looking to partner with a financial institution that could provide, among other things, acquiring, processing, and settlement services to enable Roobet to accept card transactions, and alternative payment methods (such as digital and mobile wallets, bank transfers, and cryptocurrency) for transactions initiated by Roobet or Roobet's customers. To find such a financial institution, it entered into a Payment Services Agreement with Black Site Processing, LLC, a limited liability company with its principal offices located in Wilmington, Delaware. Pursuant to that agreement, Black Site introduced Roobet to NMC.

9. NMC and Roobet then entered into a Merchant Agreement, dated September 8, 2024. The Merchant Agreement was electronically signed by Eugene Shampansky, CEO of NMC.

10. Pursuant to the Merchant Agreement, NMC would serve "as an aggregator with respect to [Roobet's] [t]ransactions, and in such capacity provide [Roobet] with payment solution technologies of execution of [t]ransactions, including but not limited to receipt and/or transfer of funds on behalf of [Roobet] from third parties, and access to payment platform interface for processing credit card payments for credit cards."

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

11. During the one-year term of the Merchant Agreement, Roobet's transactions were processed and remitted to it. Additionally, NMC established a reserve balance from deductions from payments due to Roobet.

12. The Merchant Agreement was terminated on September 30, 2025 in accordance with the provisions governing termination.

13. Despite the termination of business relationship, NMC continued to hold significant funds belonging to Roobet. To date, NMC continues to hold $1,750,765.87 that remains due and owed to Roobet. This amount is comprised of $961,575.68 that is immediately due and payable to Roobet ("Payable Balance") and $789,190.20 that was held by NMC as a reserve balance.

14. By letter dated October 22, 2025, Roobet issued a formal written demand for immediate release of the funds held by NMC on its behalf. Roobet demanded the immediate and unconditional transfer of the full payable balance of $961,575.68, demanding payment to be credited to its designated bank account no later than the close of business two (2) working days from the date of the letter. With respect to the reserve balance of $789,190.20, Roobet demanded structured, scheduled releases of the reserve balance so that the full amount held in reserve would be released by March 30, 2026.

15. In response to the October 22, 2025 demand letter, Mr. Eugene Shampansky, in his capacity as CEO of Wirebloom, emailed Roobet on October 23, 2025:

> [Roobet] will be receiving [its] funds, it is simply a matter of when . . . . At this point we are awaiting a full reconciliation of all outstanding funds and once we have that we will share that with you. We are also working on a faster release than 180 days, from termination but that will be addressed once we know the final numbers.

16. By emails dated November 5, 2025 and November 7, 2025, in further response to Roobet, Mr. Shampansky, again writing in his capacity as CEO of Wirebloom, copied Wirebloom's legal team on his communications. In his email of November 7, 2025, Mr. Shampansky included his assistant at Wirebloom to enable legal teams to coordinate and, on that date, Mr. Shampansky confirmed that: "[Wirebloom hasn't] been able to get

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

settlement data from the bank yet and therefor [*sic*] that is what's causing the delays. . . . Rest assured, we are doing everything we can to get this situation resolved with you as quickly as we can."

17. On November 13, 2025, Mr. Shampansky, again writing in his capacity as CEO of Wirebloom, informed Roobet that: "My team is still gathering the information."

18. By December 2025, Roobet had still not received any of the funds improperly held by NMC and/or Wirebloom. Accordingly, Roobet was constrained to engage legal counsel who again demanded release of $1,750,765.87 by correspondence dated December 30, 2025.

19. On January 30, 2026, SPB sent Wirebloom another demand letter in accordance with the Practice Direction on Pre-action Conduct and Protocols ("PDPAP") contained in the Civil Practice Rules ("CPR"). Among other things, that letter informed Wirebloom that it appeared evident that Roobet's transactions were aggregated by NMC and passed to a third party, being its sister entity Wirebloom, to be processed by it via the card schemes from whom Wirebloom has received the proceeds. Accordingly, Wirebloom now holds Roobet's funds and continues to hold them without basis. The letter asked for a response within 7 days and reserved Roobet's right to commence Court proceedings against Wirebloom in England for payment of the sum and/or to seek injunctive relief to preserve Roobet's funds pending payment.

20. The parties have had limited correspondence since that time. While Wirebloom has not disputed Roobet's allegations, there has not been any payment of any funds owed to Roobet. No satisfactory resolution has been reached.

21. Accordingly, Roobet contemplates commencing English Court proceedings against Wirebloom.

## I. Contemplated Claims Against Wirebloom Arising from Its Duties and Obligations Under English Law and Breach Thereof

22. Based on the foregoing, it appears that Wirebloom was aware of its sister subsidiary's Merchant Agreement with Roobet. Roobet further believes that Wirebloom

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

may hold sums belonging to Roobet. On that basis, Roobet contemplates filing the following claims against Wirebloom:

(a) For a declaration that Wirebloom is holding Roobet's monies on a constructive or resultant trust;

(b) For an accounting as to what sums were or are held by Wirebloom and are due to Roobet;

(c) For an order requiring the transfer of such funds to Roobet;

(d) For damages arising from Wirebloom's facilitation of a misapplication of the funds due to Roobet by NMC and/or Wirebloom's procurement of a breach of the Merchant Agreement by NMC by processing transactions and failing to make them available to NMC for repayment to Roobet;

(e) For restitution for Wirebloom's unjust enrichment at the expense of Roobet, to whom the sums belonged beneficially.

(f) For interest, legal costs, and any other relief that the Court finds just.

## II. Need for the Information Requested in this Petition

23. Roobet seeks to obtain information from NMC on the basis that it holds information directly relevant to the case it intends to file in the English courts. Attached as **Exhibit A** is a true and correct copy of the Subpoena to Produce Documents in a Civil Action directed to NMC.

24. NMC was a party to the Merchant Agreement and contractually engaged regarding the processing of transactions that give rise to the claims contemplated to be filed in the English court. As such, NMC should be in possession of the documents that are directly relevant to the contemplated claims. The documents sought demonstrate that NMC aggregated Roobet's transactions and passed them to its alter ego/sister entity Wirebloom, to be processed by Wirebloom via the card schemes from whom Wirebloom has received the proceeds, and that Wirebloom now holds (or held) the funds owed to Roobet. The documents seek NMC's communications with Wirebloom about such transactions, information regarding Wirebloom's role with respect to Roobet (including whether

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Wirebloom processed amounts due to Roobet and transactions as a payment processor of Roobet's customer transactions), the location of those sums, and the identity of those involved in authorizing transactions related to Roobet.

25. Based on the California Secretary of State's website, NMC's principal place of business is 1431 Ocean Ave., Ste. 100, Santa Monica CA 90401.

26. As long as it is relevant to the domestic case, English law does not contain any procedural bars on the submission or use of evidence obtained through foreign discovery proceedings.

27. To my knowledge, an English court would allow the use of information obtained by a party to proceedings obtained through an application in a foreign jurisdiction such as the present petition.

28. Should Roobet come into possession of materials as a result of this petition which are relevant to the matters in dispute in the English court proceedings, it would likely be obligated pursuant to Civil Procedure Rule 31 ("CPR 31") to disclose that information to the Defendant through the normal court disclosure process. This ordinarily applies to any document which is within Roobet's control (as that term is defined in CPR 31.8), and which is helpful or harmful to its own case, or to the case of Defendants. Accordingly, should material relevant to the matters in dispute in the English court proceedings be obtained from NMC, it will likely be provided to Wirebloom during the normal course of the English court proceedings.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on 20 February 2026.

Ben Johnson

Ben Johnson

# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| In re Ex Parte Petition of Raw Entertainment B.V. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: NATIONAL MERCHANT CORPORATION
1431 Ocean Ave., Ste. 100, Santa Monica, CA 90401

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHED EXHIBIT A

| Place: Squire Patton Boggs (US) LLP<br>555 South Flower Street, 31st Floor<br>Los Angeles, CA 90071 | Date and Time: |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ______________

*CLERK OF COURT*

OR

______________________________ *Signature of Clerk or Deputy Clerk*

______________________________ *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Petitioner Raw Entertainment B.V. , who issues or requests this subpoena, are:
Marisol C. Mork, 555 S. Flower Street, 31st Floor, Los Angeles, CA 90071, (213) 624-2500; marisol.mork@squirepb.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________________

on *(date)* ______________ .

❐ I served the subpoena by delivering a copy to the named person as follows: ______________

______________________________________________________________________

______________________________________________ on *(date)* ______________ ; or

❐ I returned the subpoena unexecuted because: ______________________________

______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________________
*Server's signature*

______________________________________
*Printed name and title*

______________________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**EXHIBIT A TO SUBPOENA**

**DEFINITIONS**

The definitions below are submitted in conjunction with and apply to the requests set forth below:

1. "And" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all information that might otherwise be construed to be outside of its scope.

2. "Any" and "each" include and encompass "all."

3. "Roobet" refers to Raw Entertainment B.V., including its current and former subsidiaries, parents, affiliated companies, corporate predecessors, corporate successors, directors, officers, shareholders, members, supervisors, manager independent contractors, representatives, attorneys, employees, and agents.

4. "NMC" refers to National Merchant Corporation, including its current and former subsidiaries, parents, affiliated companies, corporate predecessors, corporate successors, directors, officers, shareholders, members, supervisors, manager independent contractors, representatives, attorneys, employees, and agents.

5. "Merchant Agreement" refers to the agreement of that name entered into by NMC, on the one hand, and Roobet, on the other, dated September 8, 2024.

6. "Wirebloom" refers to Wirebloom Limited, including its current and former subsidiaries, parents, affiliated companies, corporate predecessors, corporate successors, directors, officers, shareholders, members, supervisors, manager independent contractors, representatives, attorneys, employees, and agents.

7. "Owed Amount" refers to the total of U.S. $1,750,765.87 of Roobet's fund that Roobet alleges is being held by NMC and/or Wirebloom, comprised as follows: (a) U.S. $961,577.68 immediately due and payable to the Roobet; (b) U.S. $789,190.20 held as a reserve balance.

8. "Communication" or "communications" means any contact, regardless of method between two or more person, organizations, companies, or other business entities, regardless of form and shall include, without limitation, e-mails, text messages, social media messages, digital

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

messages, meetings, conferences, negotiations, telephone conversations, voicemail messages, or any other form of verbal, written, or electronic exchange of information in the form of facts, ideas, inquiries or otherwise.

9. "Document" or "documents shall have the same definition as contemplated by Federal Rules of Civil Procedure 26 or 34, or Federal Rule of Evidence 1001, and includes, without limitation, electronically stored information. The term "document" also means every copy of a document where such copy is not an identical duplicate of the original.

10. "Relating to," "regarding," "with regard to," or "reflecting" means referring to, alluding to, responding to, connecting with, commenting on, in reference of, about, regarding, discussing, showing, reporting, describing, mentioning, reflecting, analyzing, summarizing, constituting, pertaining to, or evidencing.

**INSTRUCTIONS**

1. Electronically Stored Information must be produced in native format.

2. If You withhold any document or communication on the basis of any privilege and/or work-product protection, You must expressly make the claim or privilege and describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that will enable Roobet to assess the claim, including by identifying the author(s)/sender(s), recipient(s) (including those carbon copied), the date of the document, and a description of the content of the document.

3. Unless otherwise specified, these Discovery Requests seek information and documents pertaining to the time period from January 1, 2024 to the present.

**DOCUMENT REQUESTS**

**(Defined terms have the meanings set forth above)**

1. All documents and communications relating to the Merchant Agreement.

2. Documents reflecting the number and monetary amounts of transactions processed on behalf of Roobet by NMC, including an accounting of the Owed Amounts.

3. Documents sufficient to identify the location of the Owed Amounts, including the associated bank names, bank address, bank account name, bank account number, and bank

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

account sort code, the legal owner and/or beneficiary of the sum held in different accounts.

4. With respect to each account that holds any of the Owed Amounts, documents sufficient to identify the account(s), including the account holder's name, from where the funds were received and where the funds were transferred including any intercompany transfers between NMC and Wirebloom and any other affiliated entities.

5. All documents and communications of Wirebloom and NMC regarding the funds generated from, or on behalf of Roobet's transactions, including communications related to Wirebloom's (including any emails nominally from NMC but sourced from a @wirebloom.com account) handling of funds generated from those transactions, if any.

6. Documents sufficient to identify the individuals authorized to make payments on behalf of NMC for the benefit of Roobet.

7. Documents sufficient to identify the individuals authorized to make payments on behalf of Wirebloom for the benefit of Roobet.

8. Documents relating to the relationship between NMC and Wirebloom, including documents demonstrating whether Wirebloom acted as a merchant acquirer for NMC with respect to Roobet transactions.

9. Documents relating to NMC's role as an aggregator with respect to Roobet's transactions, including documents relating to any legal entities that have processed transactions for Roobet. Documents identifying amounts due from third parties to NMC in respect of the Roobet transactions resulting in the Owed Amounts.

10. To the extent that NMC is due to be paid the Owed Amounts by a third party, documents in connection with that relationship including NMC's attempts to obtain payment.

11. Documents sufficient to identify any of NMC, Wirebloom or other related company that holds funds on behalf of Roobet, including the amounts held by each merchant acquirer.

12. Documents relating to the "full reconciliation" of Roobet's account, as referenced in the email of Eugene Shampanksy, CEO of Wirebloom, dated 23 October 2026, a copy of which attached hereto as Exhibit 1.

13. All communications between NMC, Wirebloom and Black Site Processing, including between Eugene Shampansky and any principals and directors, regarding Roobet.

14. Documents relating to NMC's attempts to keep the Owed Amounts safe-guarded.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071